Good morning, Your Honors. My name is Christos Tomoibara, appearing on behalf of Appellant Plaintiff Philly Center. Speak up a little bit. Yes. I'd like to reserve a few minutes for a short rebuttal. As you noticed, we listed three cases last week that I believe is going to help you in your adjudication of this case. The first one is Jevin v. Hewlett-Packard, where, as is similar in this case, there's no opportunity for the exercise of discretion. The denial is reviewed de novo. As you know, Ms. Hunter's claim with the Plaintiff Institute was summarily denied for being tardy. And the merits of her claim of disability were not looked into. The court in Jebin reasoned that egregious procedure violations worked a substantial harm by altering the substantive relationship between the employer and the employee, that disclosure reporting and fiduciary duties sought to balance somewhat more equally. Citing the Blau v. Del Monte case decided here years ago in the Ninth Circuit. The court also pointed to the Heller case decided in the District of Columbia Circuit, where the communication or lack of it between the company and the employee was a crucial factor. Well, let me just ask you one sort of basic question about this case. The claim for disability was filed five-and-a-half years after the retirement. Under the plan, there were only two years after the retirement in which to file. So we have three-and-a-half years to account for. Assuming that there's equitable tolling, that equitable tolling is allowed, what is there on the record that shows that during that entire three-and-a-half years, Ms. Hunter was unable to file a claim? Ms. Hunter testified in the trial court, in the district court, about a condition. Her daughter, King Hunter, testified about taking care of her as well as her sister. What was submitted to the insurance company as to why she was unable to file a claim for the three-and-a-half year period? There were two documents submitted to the insurance company, the plan administration. One, it was a statement by Janice Herring that Ms. Hunter, in essence, was incapable of functioning on her own. Well, since she had to do certain physical things for her around the house. I beg your pardon, Your Honor. That letter said that the person who submitted the letter said she was performing all kinds of physical tasks for her around the house that she couldn't do herself. Yes, Your Honor. It didn't say that she was mentally incapable of submitting a claim form. Well, the decision by Ms. Hunter. Is that letter and the appeal letter from counsel, are those the two things? Those were two things submitted to the plan administrator. We submitted more evidence before the district court, Your Honor. What before the district court showed that Ms. Hunter was incapable of submitting an application over that three-and-a-half year period after the first two years? Well, the records from the Social Security Administration, Kaiser Hospital, Santa Clara Valley Medical Center, a report by Dr. George Corrales, which was submitted here in the excerpts of the record, the decision by. Security decision doesn't say that she's incapable of filing claims. He didn't say that per se, Your Honor. Pardon me? He doesn't say that per se. No. Yeah. And in fact, didn't she file a number of claims during that period? She didn't file them on her own. The first thing she filed. Somebody helped her file them? Yes, Your Honor. Well, why didn't they help her file a claim with the insurance company also? They didn't know it existed, Your Honor. Okay. So that's the only real reason. I mean, she could have filed a claim during that period. If she had known about it and she was told in August 98 by a former co-worker, Evelyn Miller. So doesn't the entire case then come down to that argument that she didn't know about it, and that was the reason? Well, not quite, Your Honor. As I was saying here, you know, the plan administrator, the employer, had under the plan fiduciary duties towards Ms. Hunter, the workers, and they had ample opportunity to give her notice of this stuff, and they didn't do it. Had an opportunity to do what? To inform her about the disability rights when the issue faced them. That's the same issue, the issue of whether she was informed. Right, Your Honor. Okay. I said that's what your claim comes down to then, basically, that she wasn't informed and they had a duty to inform her. Yes. Okay. Where is that duty set up? I don't quite understand your question, Your Honor. Where does it say they have a duty to do that? It's inherent under ERISA regulations, Your Honor, and inherent in the wording of the plan itself, to the extent that they claim that they give out or they arrange to distribute the summary plan descriptions. And the testimony by the witnesses at court that the plaintiff presented indicates that they were never given such literature. Ms. Hunter claimed that she was never given any literature. She started suffering seizures while at work in the year before she was laid off in January of 1993. She testified she had a dozen businesses. That had to do with anything, that she had a seizure at work. Most seizures do not cause people to be disabled, and even if they did, she still had an obligation to apply within the time limit. Well, she testified, Your Honor, that she was never told about disability return benefits, including her exit interview when she was laid off. He was a former co-worker at that exit interview. Now, the district court had a hearing on that question, as I recall. You had witnesses, and didn't the district court make a factual finding that she was told? Right or wrong? I mean, didn't he say, well, it's the usual practice of the company to give them the information? The court looked at the testimony of two Lockheed employees who had no personal knowledge as to whether or not things were delivered, documents that were delivered to Ms. Hunter, and they didn't know who Ms. Hunter was or any of the witnesses who testified at a trial who were former workers at Lockheed. Well, he testified, I mean, excuse me, he found that based upon the evidence of the practice, the fact that she changed status in 1992, and it was the regular practice to give them at that time, and the paperwork that she did receive concerning other benefits, that he finds that she did receive the information. Now, we would have to find that's clearly erroneous to agree with you. Why is that clearly erroneous? It was clearly erroneous because the testimony by the two Lockheed workers, in essence, were talking about a policy of Lockheed, but they did not submit evidence to the extent about the procedure they followed to make sure that the plan descriptions were distributed to the workers. And they didn't dispute the evidence presented by Ms. Hunter and her witnesses to the extent that there was nothing given to them. It wasn't just Ms. Hunter. The other workers who testified, Ms. McAdams, Mr. Kellum, Ms. Leffler, all testified there was nothing given to them. There also happened to be people of color in which, under the analysis of the Atwood case that was mentioned in the earlier case, you can look at to lessen the deference given ordinarily to the plan administrators. There was a breach of the fiduciary duty to this extent on the part of the plan administrator in Lockheed. Did you agree that this is a case where the administrator had discretion to do it, or had the discretion as to whatever the administrator did, it was discretionary? Do you agree with that? I'll have to answer yes and no, Your Honor. What's the plan say? I don't want to yes or no. What's the plan say? Do you have discretion or not? The plan for salaried workers said they had discretion. The plan for hourly workers omitted that whole paragraph. You know, it's in my comparison. It's a page 30. It's Exhibit Number 84 in the Appelli excerpts. And it's Exhibit Number 320. What number? 359 in our excerpts. So you're saying it was not discretionary? Well, what standard of review are we supposed to adopt? What do you want us to adopt? It's a de novo, Your Honor, because they never went in the mirrors of the disability claim. Are you asking us and did you ask the district court to consider evidence that the administrator did not have? Yes. And that's what the interim case says as well, Your Honor. Isn't it true that how is administrator or how can we second guess the administrator when the administrator doesn't even have the evidence? How can the administrator be making a mistake when we look at it in hindsight and say you should have known about this and we know about it, but he didn't? How does that work? Well, the administrator didn't bother to look at why it wasn't presented. All they said was it was late. The social security determination, they said it was made years after, when, in fact, Judge Mahoney's decision went back into 1993. The date of filing was she was hospitalized for the 25-day period when she was unconscious. The SSI claim was filed in June 93. She was given SSI from that point on, and the social security determination was made effective in November when her daughter Kenya applied for it. I'm sorry. It's not clear to me yet. Why isn't the discretionary decision by the administrator? You say you referred to some exhibit. What's the exhibit say differently than the plan itself that the administrator didn't have the discretion? For salaried employees, the language of discretion was omitted, Your Honor. It just isn't there. Okay. Thank you. And then the third case we cited is the Regula case, where under arrears of the plan, the administrator is charged with the task of making accurate disability determinations, and those determinations are reviewed by the court to ensure they're based on appropriate substantial evidence. And also crucial in the court's ruling in that case is that the key issue in determining whether a claim is entitled to benefits is not the language of the plan but the facts of the particular case. And there's overwhelming evidence here that supports our position that there were exceptional extreme circumstances that occurred here on the part of Ms. Hunter to qualify her for equitable tolling. I'd like to ask a question about the equitable tolling. You're suggesting that equitable tolling should apply, right? Yes, Your Honor. In our review of the cases, it indicates all the cases that you cite that equitable tolling is permitted. None of those cases are ERISA cases. Is that a fair statement? Let's see. Or let me put it another way around. Is there any case anywhere that says that in ERISA cases equitable tolling applies?  No, Your Honor. And they applied equitable tolling in that case? They talked about equitable tolling in that case, Your Honor. Did they apply it? Let's see. I've got to slow down, Your Honor, and think. Okay. I believe they did, Your Honor. The court in Regula stated that this court should have determined whether the apparent conflict of interest was serious enough to have resulted in a breach of the fiduciary duty. I'll save time for rebuttal, Your Honor. Thank you, counsel. Let me know if you came here. If it pleases the court, my name is Don Harden. I represent Lockheed Martin Retirement Plan for salaried employees and for hourly employees. Mr. Ibarra mentioned the previous case on the court's docket, and there was some talk about insurance companies. I would like to make it clear that the defendant and the appellee in this case is the Lockheed Martin Retirement Plan. It's not an insurance case at all. It's a pension benefits case. The claim at issue here is a claim for early retirement benefits based on disability. Mrs. Hunter still will be entitled to regular retirement benefits at such time as she reaches, I think it's age 55, and she's like 54 now. So what this case is all about is simply the timing of the commencement of her retirement benefits under the Lockheed Martin Retirement Plan. So there's no insurance company involved. It's not a welfare benefit plan. It's a pension benefit plan. I think if there's ever been a case where the plan administrator's decision should be upheld, this case is it. Not only was no evidence ever submitted to the administrator at all to justify equitable tolling or anything else, whatever the claim was submitted three and a half years too late, the district court, Judge White, went out of his way time after time after time again to give Mrs. Hunter an opportunity to prove her claim. He even considered, even though he held that the proper standard of review is abuse of discretion, he nevertheless went ahead and conducted a separate evidentiary hearing in which he took additional information that was not before the administrator and said, I'm going to take this information, I'm going to consider the claim de novo, I'm going to consider evidence that was not presented to the administrator, and still Mrs. Hunter was never able to produce any evidence at all to justify, well, number one, to justify the fact that she was disabled within the meaning of the plan, and number two, to justify any sort of tolling, equitable or otherwise, of the very generous two-year period for filing a claim. So no matter what standard of review this court, and I think it's clear that the standard that Judge White held, abuse of discretion, no matter what standard this court might pick, still the court below found that there was no basis to grant this claim, and this court should certainly affirm. So I'll be glad to answer questions, but this is a very simple case in my opinion. Thank you, counsel. Thank you, Your Honor. I'd just like a few comments, Your Honor. The ERISA statutory scheme allows for equitable remedies under Section 502A3, and that's one of our causes of action here, you know. There was a duty here to inform Ms. Hunter, and it arises from the fiduciary duties owed by the plan administrator to her. The lower court erred because the wrong standard was used for equitable tolling. The court should have properly looked at the extreme circumstances in this case and the facts repeat about that with the testimony of witnesses and the medical evidence. And the discretion on the part of the plan administration is not quite clear in this case because of the two different plans, the hourly and the salaried.  Thank you, counsel. The case is currently being submitted.
judges: Reinhardt, Graber, Rhoades